UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

**SOL NY CORP.,**

                               Plaintiff,

               – against –

**SAM'S INTERNATIONAL GROUP LLC A/K/ A SIG DISTRO A/K/A SIG DISTRIBUTION A/K/A SIG DISTRO WHOLESALE, FEEL GOOD INDUSTRY LLC, DIRECT IMPORTS, LLC, SAMUEL A. HABIB, EDGAR A. MOHAMMED, PETER A. MESAK, APVAPESHOP INC., BOSTON WHOLESALE OUTLET INC.; KUMAR INC. D/B/A "RAVI'S WHOLESALE MARKET", KESHAV DISTRIBUTOR LLC D/B/A "NEW ENGLAND SMOKE DISTRIBUTION", CIRCLE FIVE DISTRIBUTORS INC., SMOKER CHOICE DISTRIBUTOR LLC, SMOKER'S LANE OF NH, INC. D/B/A "SMOKER'S LANE", VISION CIGAR & CIGARETTE WHOLESALE, LLC, PRICE POINT DISTRIBUTORS, INC., BHAGAT DISTRIBUTORS, INC. D/B/A "GOTHAM DISTRIBUTORS", MAHANT KRUPA 56 LLC D/B/A "EMPIRE SMOKE DISTRIBUTORS",**

                               Defendants.

------------------------------------------------------------------ X

           :   **MEMORANDUM DECISION AND ORDER**

           24-CV-3964 (AMD) (PCG)

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff brings this case against Boston Wholesale Outlet Inc. ("Boston Wholesale"),

Kumar Inc. d/b/a Ravi's Wholesale Market ("Ravi's Wholesale Market"), Circle Five

Distributors LLC ("Circle Five"), Smoker Choice Distributor LLC ("Smoker Choice"), Smoker's

Lane of N.H. Inc. d/b/a "Smoker's Lane" ("Smoker's Lane"), and Vision Cigar & Cigarette

1

Wholesale LLC ("Vision Cigar") for trademark infringement, unjust enrichment, and unfair business practices under Section 349 of the New York General Business Law.  (ECF No. 94 ¶¶ 235–253, 268–279.)[1]  Before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  (ECF No. 115.)  Also before the Court is the plaintiff's motion for sanctions under Federal Rule of Civil Procedure11.  (ECF No. 128.)  For the following reasons, the motion to dismiss is granted and the motion for sanctions is denied.

## BACKGROUND

### I.      Factual Background

The plaintiff is "one of the most well-known sellers of smoke shop products in the United States."  (ECF No. 94 ¶ 1.)  "For nearly 15 years," the plaintiff "has sold smoke shop products under the 'KRAVE' brand."  (*Id.* ¶ 2.)  "In or about 2023," the plaintiff "became aware that competitors were selling the same products as [the plaintiff] . . . with the confusingly similar 'CRAVE' brands."  (*Id.* ¶ 6.)

The defendants are wholesalers and retailers based in Massachusetts and New Hampshire.  (*See* ECF Nos. 125-1, 125-2, 125-3, 125-4, 125-5, 125-6.)  Boston Wholesale

---

[1] The plaintiff also brings claims against: Sam's International Group LLC a/k/a Sig Distro a/k/a Sig Distribution a/k/a Sig Distro Wholesale, Feel Good Industry LLC, Direct Imports, LLC, Samuel A. Habib, Edgar A. Mohammed, and Peter A. Mesak (the "Habib defendants"); Apvapeshop Inc., Bhagat Distributors d/b/a Gotham Distributors, Mahant Krupa 56 LLC d/b/a Empire Smoke Distributors, and Price Point Distributors Inc. (the "New York defendants"); and Keshav Distributor LLC d/b/a New England Smoke Distribution ("Keshav").  (*See* ECF No. 94 ¶¶ 7–8, 200–05.)  Throughout this case, the parties and the Court have referred to defendants Boston Wholesale, Ravi's Wholesale Market, Keshav, Circle Five, Smoker Choice, Smoker's Lane, and Vision Cigar as the "MA/NH Defendants."  (*See, e.g.*, *ECF Minute Entry dated Nov. 19, 2024*; ECF No. 93 at 1 n.3.)  In their briefing, the parties use this term or "Mass/NH Defendants" to refer to the defendants moving to dismiss the case for lack of personal jurisdiction.  (*See, e.g.*, ECF No. 115-1 at 6; ECF No. 117 at 5.)  However, Keshav is not moving to dismiss the complaint.  (*See* ECF No. 115-1; *see also* ECF No. 117 at 5 n.1.)  Accordingly, to avoid confusion, the Court uses the term "defendants" to refer to the six defendants moving to dismiss for lack of personal jurisdiction.

Outlet, a wholesaler based in Massachusetts, is licensed to sell tobacco and nicotine products only to licensed retailers in Massachusetts and New Hampshire. (*See* ECF No. 125-1 ¶¶ 3–4, 6, 8.) Ravi's Wholesale Market, a wholesaler based in New Hampshire, is licensed to sell tobacco and nicotine products only to licensed retailers in Massachusetts and New Hampshire. (*See* ECF No. 125-2 ¶¶ 3–6, 8, 10.) Circle Five, a wholesaler based in New Hampshire, is licensed to sell tobacco and nicotine products only to licensed retailers in New Hampshire. (ECF No. 125-3 ¶¶ 4–5, 7.) Smoker Choice is a "newly established limited liability company which is in the process of building out a new wholesale store" in New Hampshire; it has applied for a wholesale license in New Hampshire but has not yet received one, and has not made any sales of tobacco, nicotine, or "any other goods." (ECF No. 125-4 ¶¶ 4, 6–7.) Smoker's Lane operates two stores in New Hampshire and has a retail license to sell tobacco and nicotine products in New Hampshire. (ECF No. 125-5 ¶¶ 4, 7.) It is "not licensed to sell tobacco or nicotine products at wholesale in New York or any state other than New Hampshire." (*Id.* ¶ 6.) Vision Cigar, a wholesaler with one store in New Hampshire, is licensed to sell tobacco and nicotine products only to retailers in Massachusetts, New Hampshire, and Rhode Island. (ECF No. 125-6 ¶¶ 4, 6, 8.) None of the defendants have any customers in New York, and none of them have ever sold any products in New York. (*See* ECF No. 125-1 ¶ 10; ECF No. 125-2 ¶ 12; ECF No. 125-3 ¶ 9; ECF No. 125-4 ¶ 7; ECF No. 125-5 ¶ 8; ECF No. 125-6. ¶ 9.)[2] The amended complaint alleges that each defendant "sells and distributes a variety of products that infringe upon Plaintiff's KRAVE Trademark in the smoke shop industry." (ECF No. 94 ¶¶ 179, 192, 210, 215, 221, 227.)

---

[2] Smoker Choice has not made any sales at all. (ECF No. 125-4 ¶ 7.)

## II.    Procedural History

On May 31, 2024, the plaintiff filed a complaint against the Habib defendants, some of the New York defendants, Keshav, Boston Wholesale, Ravi's Wholesale Market, Circle Five, Smoker Choice, Smoker's Lane, Vision Cigar, and Perfect Choice Smoke Shop Inc.  (ECF No. 1.)[3]  On August 1, 2024, Keshav, Boston Wholesale, Ravi's Wholesale Market, Circle Five, Smoker Choice, Smoker's Lane, and Vision Cigar moved to dismiss the complaint for lack of personal jurisdiction.  (ECF No. 35.)  While the motion to dismiss was pending, on January 24, 2025, the plaintiff filed a motion to amend the complaint.  (ECF No. 88.)  In light of the motion to amend, the Court denied the motion to dismiss without prejudice and with leave to renew. (*ECF Order dated Feb. 14, 2025*.)  On June 4, 2025, Magistrate Judge Cheryl Pollak granted the plaintiff's motion to amend.  (ECF No. 93.)  The plaintiff filed an amended complaint on June 11, 2024.  (ECF No. 94.)[4]  On September 9, 2025, Boston Wholesale, Circle Five, Ravi's Wholesale Market, Smoker Choice, Smoker's Lane, and Vision Cigar moved to dismiss the amended complaint for lack of personal jurisdiction.  (ECF No. 115.)  The plaintiff opposed (ECF No. 117), and the defendants replied (ECF No. 125).[5]

On December 22, 2025, the plaintiff filed a letter "advis[ing] the Court that newly produced documents conclusively demonstrate that there is long-arm jurisdiction over" Circle Five and Ravi's Wholesale Market, and asked the Court to take this "evidence" into account when it decided the motion to dismiss.  (ECF No. 128 at 1.)  The defendants responded on

---

[3] The plaintiff voluntarily withdrew its claims against Perfect Choice Smoke Shop Inc. on October 29, 2024.  (ECF No. 66.)

[4] The amended complaint substituted Bhagat Distributors for the defendant named in the original complaint as "Gotham Distributors LLC" and added Mahant Krupa 56 LLC as a defendant.  (*See* ECF No. 94.)

[5] The Court has determined that there is no need for oral argument.

January 16, 2026.  (ECF No. 130.)  The plaintiff replied on January 20, 2026.  (ECF No. 131.)

On January 22, 2026, the Court directed the plaintiff "to file all of the invoices upon which it

relies in its letter motion by February 5, 2026."  (*ECF Order dated Jan. 22, 2026*.)  The plaintiff

filed another letter and the relevant invoices on February 3, 2026.  (ECF Nos. 133, 133-1, 133-2,

133-3, 133-4.)

**LEGAL STANDARD**

**I.     Motion to Dismiss for Lack of Personal Jurisdiction**

A plaintiff opposing a motion to dismiss on Rule 12(b)(2) grounds "bears the burden of

demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."

*Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin*

*Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  The showing a plaintiff must

make to meet that burden is governed by a "sliding scale," which "varies depending on the

procedural posture of the litigation."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81,

84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)).  "To survive a 12(b)(2) motion prior to discovery, 'a plaintiff need only make a

prima facie showing that the court possesses personal jurisdiction over the defendant.'  *Martinez*

*v. Queens Cnty. Dist. Atty.*, No. 12-CV-6262, 2014 WL 1011054, at *4 (E.D.N.Y. Mar. 17,

2014) (quoting *DiStefano v. Carozzi North America*, 286 F.3d 81, 84 (2d Cir.2001)), *aff'd*, 596

F. App'x 10 (2d Cir. 2015).

"In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2), a district court may consider materials outside the pleadings."  *Jerusalem NY*

*Enterprises LLC v. Huber Erectors & Hoisting, LLC*, No. 21-CV-376, 2021 WL 5827934, at *3

(E.D.N.Y. Dec. 8, 2021) (collecting cases).  The court must "construe the pleadings and any

5

supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci IV)*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  The court does not need to "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

## II.      Motion for Sanctions

As relevant here, Federal Rule of Civil Procedure 11(b) provides that an attorney who "present[s] to the court a pleading, written motion, or other paper" has "certifie[d]" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  "Rule 11 sanctions are appropriate if: the legal contentions contained in a writing are frivolous; or the factual contentions therein do not have evidentiary support." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (citation omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015).

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir.2012)).

Accordingly, "sanctions under Rule 11 do not require a finding of bad faith." *Offor v. Ctr.*, No. 15-CV-2219, 2016 WL 3566217, at *2 (E.D.N.Y. June 25, 2016), *aff'd sub nom. Offor v. Mercy Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017). "With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *StreetEasy, Inc.*, 752 F.3d at 307 (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)).

The Court may impose "an appropriate sanction on any attorney, law firm, or party that violated [this] rule or is responsible for the violation," as long as the attorney or party has received "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). But even when a court decides that a party or attorney violated Rule 11, sanctions "are discretionary, not mandatory," *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012), and "must be imposed with caution," *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (summary order) (quoting *MacDraw Inc., v. CIT Grp. Equipment Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996)). Therefore, "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading." *Singh v. City of New York*, No. 19-CV-5030, 2020 WL 5752157, at *17 (E.D.N.Y. Sept. 24, 2020) (quoting *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 228 (E.D.N.Y. 2010)).

## DISCUSSION

### I.    Personal Jurisdiction under New York's Long-Arm Statute

The plaintiff argues that the defendants are subject to long-arm jurisdiction under New York law. (ECF No. 117 at 9–15.) Alternatively, the plaintiff argues that it is entitled to jurisdictional discovery. (*Id.* at 16.)

7

### a.      Statutory Basis

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state."  *Yak v. BiggerPockets, LLC*, No. 20-3498, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  The plaintiff argues that the Court has personal jurisdiction over certain of the defendants under Section 302(a)(1) of New York's long-arm statute, and over others under Section 302(a)(3).  (*See* ECF No. 117 at 12–15; ECF No. 128 at 3; ECF No. 131 at 1.)  The Court addresses these claims in turn.

### i.      Section 302(a)(1)

The plaintiff argues that the Court has personal jurisdiction over Smoker Choice and Vision Cigar under Section 302(a)(1).  (ECF No. 117 at 14–15.)  Under Section 302(a)(1), a court can exercise specific jurisdiction over a defendant who is not domiciled in New York if that defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  Therefore, "[t]he Court must determine '(1) whether the defendant transacts any business in New York, and, if so, (2) whether this cause of action arises from such a business transaction.'"  *Palmer v. eCapital Corp.*, No. 23-CV-4080, 2024 WL 3794715, at *4 (S.D.N.Y. Aug. 13, 2024) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

"New York courts define transacting business as purposeful activity — some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Best Van Lines, Inc.*, 490 F.3d at 246 (citation modified).  "At a minimum, the defendant must, on his or her own initiative[,] project himself or herself into the state to engage in a sustained and substantial

8

transaction of business." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (summary order) (citation modified); *see also Atwal v. iFinex Inc.*, No. 22-CV-149, 2023 WL 3063450, at *6 (W.D.N.Y. Mar. 22, 2023) ("A non-domiciliary defendant transacts business in New York 'when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business.'" (quoting *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, 738 F. App'x 25, 26 (2d Cir. 2018))).

The plaintiff claims that there is jurisdiction over Smoker Choice under Section 302(a)(1) because its website says it has "50+ locations throughout New York and Pennsylvania." (ECF No. 117 at 14.) The defendants respond that this website is "not owned or controlled by Smoker Choice," and that Smoker Choice is a "newly established limited liability company which is in the process of building out a new wholesale store" in New Hampshire. (ECF No. 125 at 13.) Smoker Choice has applied for a wholesale tobacco license in New Hampshire but has not received one yet, and "has not yet opened for business, purchased any inventory, or made any sales to date." (*Id.*) The amended complaint also cites a post on a Facebook page "maintained by" Smoker Choice that "advertise[es] the infringing CRAVE Brand products for sale." (ECF No. 94 ¶ 217.)

To support its claim that there is Section 302(a)(1) jurisdiction over Vision Cigar, the plaintiff cites Vision Cigar's website, which says that it "distribute[s] across much of the northeast," and a "new website under development," which says that Vision Cigar "specialize[s] in Menthol, Unflavored and Clear Vape disposables for states which have banned the flavors including Rhode Island, New Hampshire, New York and New Jersey." (ECF No. 117 at 15.) The plaintiff claims that the representations on the new website prove that Vision Cigar "is specifically targeting customers in New York because it has an out-of-state license to

9

manufacture flavored vape liquid and New York State has banned flavored vapor products."
(*Id.*)  The defendants respond that "Vision Cigar does not have any customers, has not sold any products, and has never directed advertising or marketing towards businesses or residents of New York," and that "Vision Cigar has no internet sales to customers in this District."  (ECF No. 125 at 16.)  They maintain that the "new website" cited by the plaintiff "is not affiliated with Vision Cigar as Vision Cigar does not sell and is not licensed to sell products in New York or New Jersey."  (*Id.* at 16–17.)

"When a defendant is alleged to have 'transacted business' through a website, courts examine the degree of interactivity of the website because it bears upon whether the defendant conducted purposeful activity in the state."  *Episode 3, LLC v. Advantage Coll. Plan., LLC*, No. 25-CV-3745, 2026 WL 775910, at *5 (S.D.N.Y. Mar. 19, 2026) (citing *Best Van Lines, Inc.*, 490 F.3d at 252).  "A website that merely provides information that may be accessed by individuals in New York is not grounds for the exercise of personal jurisdiction."  *Id.*  "Active websites used by New York consumers to purchase an out-of-state defendant's products, on the other hand, generally confer personal jurisdiction."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008).  The complaint does not allege and the plaintiff does not cite any evidence that Smoker Choice or Vision Cigar had interactive websites that allowed users to exchange information or purchase any products.

But the Court could not exercise jurisdiction under Section 302(a)(1) even if the defendants' websites were interactive.  "Courts in the Second Circuit deem a defendant to have 'transacted business' in New York through its website if New York residents actually used the website's interactive features to initiate some transaction with the defendant."  *Episode 3, LLC*, 2026 WL 775910, at *6 (collecting cases).  The plaintiff has not identified any sales that Smoker

10

Choice or Vision Cigar made into New York.  The Court cannot exercise personal jurisdiction over these defendants because the plaintiff has not plausibly alleged that Smoker Choice or Vision Cigar transacted business in New York through their websites.  Accordingly, the Court does not have jurisdiction over either of these defendants under Section 302(a)(1).

ii.    *Section 302(a)(3)*

The plaintiff maintains that the Court has personal jurisdiction over Ravi's Wholesale Market, Circle Five, and Vision Cigar under Section 302(a)(3).  (ECF No. 117 at 12–13, 15; ECF No. 128 at 3.)  The plaintiff does point to any statutory basis for asserting personal jurisdiction over defendants Boston Wholesale or Smoker's Lane.  (*See* ECF No. 117 at 12, 14.)  The plaintiff does, however, discuss "interstate commerce" in connection with its argument that the Court has personal jurisdiction over these defendants, so the Court construes the plaintiff's argument to be that the Court also has personal jurisdiction over them under Section 302(a)(3).  (*See id.*)

Under Section 302(a)(3), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state" if he either "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state" or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  C.P.L.R. § 302(a)(3).  Put another way, Section 302(a)(3)(i) requires that the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," and Section 302(a)(3)(ii) requires that the defendant "expects or should reasonably

11

expect the act to have consequences in the state." *Id.*; *see also Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 131 (S.D.N.Y. 2020) (explaining that Section 302(a)(3) "permits personal jurisdiction when a defendant commits a tort outside New York which causes harm within New York, *and* one of two other circumstances are present: the defendant (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or (2) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" (citation modified)).

The plaintiff has not demonstrated that these defendants "derive[] substantial revenue from goods used or consumed or services rendered" in New York. C.P.L.R. § 302(a)(3)(i); *see also Astor Chocolate Corp.*, 510 F. Supp. 3d at 131 (rejecting argument that defendant was subject to personal jurisdiction under Section 302(a)(3)(i) where "there is no evidence regarding what portion of [the defendant's] income or revenue originates in the state"). Nor do these defendants "regularly do or solicit business, or engage 'in any other persistent course of conduct' in New York." *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 CV-6153, 2014 WL 496875, at *12 (S.D.N.Y. Feb. 5, 2014) (quoting C.P.L.R. § 302(a)(3)(i)).[6] The plaintiff claims that the websites maintained by Boston Wholesale, Circle Five, and Vision Cigar give the Court personal jurisdiction over those defendants. (*See* ECF No. 117 at 12–15.) But the fact "[t]hat individuals

---

[6] The plaintiff claims that "the Court has personal jurisdiction over Vision Cigar pursuant to CPLR §302(a)(3)(i) because it 'regularly does or solicits business' with New York," and that Vision Cigar "specifically target[s] customers in New York because it has an out-of-state license to manufacture flavored vape liquid and New York State has banned flavored vapor products." (ECF No. 117 at 15.) But as discussed above, the website the plaintiff cites does not belong to defendant Vision Cigar. (*See* ECF No. 125 at 16–17.) In any event, the fact that a defendant operated a website stating that it "specialize[s] in Menthol, Unflavored and Clear Vape disposables for states which have banned the flavors including Rhode Island, New Hampshire, New York and New Jersey" (ECF No. 117 at 15), is insufficient to establish that it derived substantial revenue from or regularly did business in New York for purposes of Section 302(a)(3)(i).

in New York can continuously access — and, in a limited way, interact with — Defendant's website is insufficient to establish § 302(a)(3)(i) jurisdiction." *DH Servs., LLC*, 2014 WL 496875, at \*12. Accordingly, the Court does not have jurisdiction over Ravi's Wholesale Market, Circle Five, Vision Cigar, Boston Wholesale, or Smoker's Lane under Section 302(a)(3)(i).

Nor has the plaintiff shown that any of these defendants "expect[ed] or should reasonably expect the act to have consequences in" New York. C.P.L.R. § 302(a)(3)(ii). "An objective test — and not a subjective test — governs whether a defendant expects or should reasonably expect his act to have consequences within New York." *Energy Brands Inc.*, 571 F. Supp. 2d at 467–68 (citing *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999)). "[T]he defendant 'must have made a discernible effort to directly or indirectly serve the New York market.'" *Astor Chocolate Corp.*, 510 F. Supp. 3d at 132 (quoting *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 540 (S.D.N.Y. 2018)). "Occasional sales into New York, or awareness of a possibility that a product will find its way into New York, is not sufficient to satisfy this element." *Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 266 (E.D.N.Y. 2015) (citation modified).

The plaintiff's reference to the defendants' websites and social media postings is unavailing. (*See* ECF No. 117 at 12–15.) "[N]othing about Defendants' website[s] or the way they have conducted their business demonstrates an attempt to serve the New York market or suggests that they should have expected their conduct to have consequences in New York." *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 627 (S.D.N.Y. 2013) (citation modified); *see also Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004) ("[T]he mere fact that the [defendants'] website, which invites only limited interactive

13

content, is continuously accessible to New York residents does not establish the sort of persistent course of conduct in the state fairly to require the [defendants] to answer in New York for their out-of-state actions in maintaining the website."); *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 573–74 (E.D.N.Y. 2011) (holding in a trademark infringement case that "the fact that the website can be viewed in New York, standing alone, does not mean that the Defendant reasonably expected that its allegedly tortious actions would have consequences in New York State" and collecting cases showing that courts have found personal jurisdiction only when there were additional indicators that the defendants were attempting to reach a New York market). Indeed, with the exception of the Vision Cigar website that the defendants claim belongs to an entirely different entity, none of these websites or social media posts even mention New York. (*See* ECF No. No. 117 at 12–15.) The defendants assert that Ravi's Wholesale Market, Circle Five, Vision Cigar, Boston Wholesale, and Smoker's Lane do not have any New York customers and have never sold any products in New York. (ECF No. 125 at 8, 10, 12, 14, 16.) Nor are any of these defendants licensed to sell tobacco or nicotine products in New York. (*Id*. at 8–9, 11, 14–15.) The plaintiff has not offered any evidence to the contrary.

After the motion to dismiss was fully briefed, the plaintiff filed a letter "to advise the Court that newly produced documents conclusively demonstrate that there is long-arm jurisdiction" over Circle Five and Ravi's Wholesale Market under Section 302(a)(3). (ECF No. 128 at 1.)[7] According to the plaintiff, the "newly produced documents" show that Circle Five and Ravi's Wholesale Market purchased the "infringing product" from distributors in New York

---

[7] The plaintiff also requested that the Court "hold an evidentiary hearing as soon as practicable so discovery in this case can proceed on a single track." (ECF No. 128 at 3.) A hearing is unnecessary. The documents do not "conclusively demonstrate that there is personal jurisdiction over Circle Five and Ravi's Wholesale pursuant to New York's long-arm statute CPLR 302(a)(3)." (*Id.*).

who shipped it to them in New Hampshire.  (*See id.* at 2–3.)  As a threshold matter, many of the invoices on which the plaintiff relies are from after May 31, 2024, the date the plaintiff filed this case.  (*See id.*)  Courts in this circuit have declined to find personal jurisdiction based on events that occurred after the filing of a lawsuit or between the filing of an original and amended complaint.  *See DH Servs., LLC*, 2014 WL 496875, at *14 (collecting cases).  In any event, the invoices do not establish jurisdiction under Section 302(a)(3(ii).  Evidence that Circle Five and Ravi's Wholesale Market received shipments from a distributor in New York does not show that these defendants "made a discernible effort to directly or indirectly serve the New York market." *Astor Chocolate Corp.*, 510 F. Supp. 3d at 132 (citation omitted).[8]  Accordingly, the Court does not have jurisdiction over Ravi's Wholesale Market, Circle Five, Vision Cigar, Boston Wholesale, or Smoker's Lane under Section 302(a)(3)(ii).

### b.      Due Process

Because the Court does not have personal jurisdiction over the defendants under New York's long arm statute, it does not analyze whether exercising personal jurisdiction would comport with due process.  *See Best Van Lines, Inc.*, 490 F.3d at 242 (holding that the court proceeds to the constitutional prong of the analysis "[i]f, but only if" it concludes that there is a statutory basis for personal jurisdiction); *Marcus v. Archer*, No. 19-CV-7099, 2020 WL

---

[8] After the Court directed the plaintiff to file the invoices it cited in its letter, the plaintiff filed another letter in which it asserted for the first time that "[a] summary of sales made by Sam's International Group LLC d/b/a 'Sig Distro' in Massachusetts" to Smoker Choice, Keshav, and "a New Hampshire company called 'Circle Discount Beverage' which in all likelihood is Defendant Circle Five Distributors Inc. . . . demonstrate that Defendant Smoker Choice, Circle Five, and Keshev [sic] are engaged in interstate commerce" and are therefore "subject to long-arm jurisdiction in New York pursuant to CPLR § 302(a)(3)(ii)." (ECF No. 133 at 2–3.)  This argument is unpersuasive.  First, Keshav has not moved to dismiss for lack of personal jurisdiction, so the plaintiff's arguments about Keshav are irrelevant.  Second, the evidence the plaintiff cites does not establish personal jurisdiction over Smoker Choice or Circle Five under Section 302(a)(3)(ii) because the plaintiff has provided no evidence or plausibly alleged that those defendants "expect[ed] or should reasonably expect the act to have consequences in" New York.  C.P.L.R. § 302(a)(3)(ii).

4937353, at *4 (S.D.N.Y. Aug. 24, 2020) ("Because there is no statutory basis for jurisdiction, there is also no need for the Court to address whether the exercise of personal jurisdiction would comport with due process.").

        **c.**        **Jurisdictional Discovery**

"Whether to allow jurisdictional discovery is 'a decision as to which a district court enjoys substantial discretion.'" *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 150–51 (S.D.N.Y. 2023) (quoting *Keren Chasanim Corp. v. Vill. of Kiryas Joel*, No. 07-CV-262, 2008 WL 11518871, at *5 (S.D.N.Y. Nov. 10, 2008)). "While the bar for granting jurisdictional discovery is low, and it is appropriately granted where a plaintiff's allegations make a sufficient start toward establishing personal jurisdiction, if the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F.Supp.3d 287, 298 (S.D.N.Y. Feb. 21, 2023) (citation modified).

The plaintiff has the burden of offering evidence to demonstrate a *prima facie* case for the court's exercise of personal jurisdiction. *See Jazini*, 148 F.3d at 186 ("Since the [plaintiff] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."). It has not made that showing. Moreover, courts have denied motions for jurisdictional discovery where "the defendant submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction" and "has denied that it has sold its services to any New York customers; denied that it has customers in New York; and denied that it has derived revenue from New York, or has agents present in New York." *A.W.L.I. Grp., Inc.*, 828 F. Supp. 2d at 575. The defendants in this case submitted affidavits declaring that they do not have any customers in New York and

16

have never sold any products in New York.  (*See* ECF Nos. 125-1; 125-2; 125-3; 125-4; 125-5; 125-6.)[9]  Accordingly, the Court denies the plaintiff's request for jurisdictional discovery and grants the defendants' motion to dismiss pursuant to Rule 12(b)(2).

## II.     Rule 11 Sanctions

The plaintiff asks the Court to impose Rule 11 sanctions against the defendants "that — like Circle Five and Ravi's — made knowingly false representations to this Court in an effort to conceal the fact that they conduct business in New York so they could make a frivolous pre-discovery motion to dismiss."  (ECF No. 128 at 3.)  The Court has granted the defendants' motion to dismiss, so it was clearly not "frivolous," and the plaintiff's motion for sanctions on that ground is denied.  *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08-CV-4207, 2012 WL 1038804, at *11 (E.D.N.Y. Mar. 28, 2012) (denying motion for sanctions where "it is clear that the motion had merit" because "[t]he Court has granted defendants' motion to dismiss").

According to Circle Five's and Ravi's Wholesale Market's affidavits, they have "never entered into any contracts with a person or corporate entity located in New York."  (ECF No. 125-3 ¶ 17; ECF No. 125-2 ¶ 20.)  The plaintiff alleges, however, that "newly produced" invoices show that Circle Five and Ravi's Wholesale Market bought infringing products from Gotham Smoke Distributors, a corporation with a principal place of business in New York.  (*See* ECF No. 128 at 2–3; ECF No. 94 ¶ 154.)  "Rule 11(c) of the Federal Rules of Civil Procedure allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court."  *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 517–18 (S.D.N.Y. 2012)

---

[9] Smoker Choice has not opened for business and has not made any sales.  (ECF No. 125-4 ¶ 7.)

17

(citation modified).  But as the defendants note, the invoices that the plaintiff cites post-date the affidavits filed on behalf of Circle Five and Ravi's Wholesale Market.  (*See* ECF No. 130 at 3.)[10] Under these circumstances, sanctions against Circle Five and Ravi's Wholesale Market are not appropriate.  Accordingly, the Court denies the plaintiff's motion for sanctions.

**CONCLUSION**

For these reasons, the defendants' motion to dismiss the plaintiff's claims for lack of personal jurisdiction is granted, and the plaintiff's motion for sanctions is denied.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       July 20, 2026

---

[10] The Circle Five affidavit is dated July 26, 2024.  (*See* ECF No. 125-3 at 4.)  One of the documents the plaintiff cites in its letter is an "[i]nvoice dated February 11, 2024 from Gotham showing that Defendant Circle Five purchased infringing product from Gotham and that it was shipped from Gotham in New York to Circle Five in New Hampshire."  (ECF No. 128 at 2 (citing Goth 00063).)  But that invoice is dated February 11, 2025.  (*See* ECF No. 133-1 at 5.)